```
                                          CLERK'S OFFICE U.S. DIST. COURT
                                              AT HARRISONBURG, VA
                                                     FILED
    IN THE UNITED STATES DISTRICT COURT
   FOR THE WESTERN DISTRICT OF VIRGINIA      February 26, 2025
             ROANOKE DIVISION
                                           LAURA A. AUSTIN, CLERK
                                           BY: s/J.Vasquez
                                                DEPUTY CLERK
```

| | |
|---|---|
| **JAMES GARFIELD SHUMATE,** | ) |
| Plaintiff, | ) Case No. 7:23CV00199 |
| v. | ) **OPINION AND ORDER** |
| **CRAWFORD, ET AL.,** | ) JUDGE JAMES P. JONES |
| Defendants. | ) |

*James Garfield Shumate, Pro Se Plaintiff; Julian F. Harf, SPILMAN THOMAS & BATTLE, PLLC, Roanoke, Virginia, for Defendants.*

The plaintiff, a Virginia inmate proceeding pro se, alleges that the defendants — New River Valley Regional Jail (NRVRJ) and New River Valley Regional Jail Authority (NRVRJA) — failed to provide him with a transportation vehicle that accommodated his physical disability as an amputee.[1]  These allegations are construed as arising under the Americans with Disabilities Act (ADA) and/or the Rehabilitation Act (RA).  After review of the parties' submissions, I conclude that the defendants' Motion to Dismiss must be granted.

---

[1] A Second Amended Complaint (SAC) is the current active pleading.  In this pleading, Shumate abandoned his earlier claims against individual jail officials and named only NRVRJ and NRVRJA as defendants.

I. BACKGROUND.

Shumate alleges that at the time his claims arose, he was confined at NRVRJ. He states that he is "an amputee of the left leg below the knee which is a visible physical impairment that substantially limits one or more of [his] major life activities," such as walking, standing, and stepping. SAC 1, ECF No. 48. He relies on a wheelchair as a mobility device. On eight occasions between July 12, 2022, and March 14, 2023, five different NRVRJ officers transported Shumate to court appearances and then transported him back to the NRVRJ.[2] On each occasion, the transportation van used was not wheelchair or otherwise handicap equipped. Shumate alleges that when transported, he had to leave his wheelchair and crawl on hands and knees "up into and out of these vehicles." *Id.* at 2. Each time, he asked officers to transport him in a properly equipped vehicle, but they denied these requests. He also submitted written requests to higher ranking officials, including

---

[2] As stated, no one officer transported Shumate to each of his several court appointments. Officer Crawford transported Shumate to court in Floyd County two times: July 12 and October 25, 2022. Officer Wright transported Shumate to court in Giles County three times: August 14, September 20, and October 5, 2022. Officer Fowler took Shumate to court once to Giles County on January 9, 2023, and once to Floyd County on March 14, 2023. Officer Warden took Shumate to Floyd County court on February 7, 2023.

the superintendent, asking to be transported in vehicle equipped to accommodate an inmate in a wheelchair.[3]

Shumate alleges that being forced to crawl in and out of the transport vehicles was discriminatory and dehumanizing, and often included sarcastic remarks from the officers. It allegedly "took a toll on [him] mentally" as added to other issues, such as losing his leg and serving a criminal sentence. *Id.* at 3. The SAC does not state specifically the relief Shumate seeks. However, his initial Complaint and Amended Complaint, both of which are verified, seek only monetary damages. *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021). Moreover, Shumate is no longer confined at the NRVRJ and as such, cannot seek injunctive relief. Therefore, I construe the SAC as seeking only monetary damages.

The defendants' Motion to Dismiss asserts that Shumate's SAC fails to state a claim on which relief could be granted under the ADA or RA. Specifically, the defendants argue that Shumate cannot prevail on any claim against the NRVRJ, and that he also fails to allege facts demonstrating that the NRVRJA was required to provide a handicap-accessible van, because the existing vans provided Shumate

---

[3] Shumate claims in the SAC that he did not receive any responses to his written requests. Later, however, he admits that two supervisory officials did respond, advising him that the NRVRJ did not currently have a handicap-equipped van, but that officials intended to acquire one when the jail next needed a replacement vehicle. SAC 5, ECF No. 48; SAC Attach. 2, 3, ECF No. 48-1.

meaningful access to transportation to and from court proceedings. Shumate has responded to the defendants' motion, making it ripe for consideration.

## II. DISCUSSION.

### A. The Motion to Dismiss Standard.

"A Rule 12(b)(6) motion to dismiss tests only the sufficiency of a complaint." *Mays ex rel. Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).[4] In considering a Rule 12(b)(6) motion, "[t]he district court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). A complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim includes factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Claims against NRVRJ.

Shumate's SAC names as defendants either NRVRJ (the jail itself) or NRVRJA (the supervisory authority for the jail). A local jail, even a regional jail, is not a legal entity capable of being sued. *Yates v. Nw. Reg'l Jail*, No. 7:23CV00572, 2024 WL 1417979, at *1 (W.D. Va. Apr. 2, 2024). Rather, the NRVRJ is a building

---

[4] I have omitted internal quotation marks, alterations, and/or citations here and throughout this Opinion, unless otherwise noted.

operated by the NRVRJA.  "With respect to the Rehabilitation Act and ADA claims, . . . the [NRVRJA] — not the Jail [itself] — is the instrumentality" that the law vests with the capacity to be sued.  *Latson v. Clarke*, No. 1:16-CV-00447-GBL-MSN, 2016 WL 11642365, at *5 (E.D. Va. Oct. 14, 2016).  Therefore, the Motion to Dismiss must be granted as to Shumate's claims against the NRVRJ.

### C. Claims against NRVRJA.

Both Title II of the ADA and Section 504 of the RA prohibit public entities from discriminating against individuals with disabilities.  Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (quoting 42 U.S.C. § 12132).  Similarly, Section 504 of the RA provides "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Id.* (quoting 29 U.S.C. § 794(a)).  For purposes of addressing the pending Motion to Dismiss, I will combine Shumate's claims under the ADA

and the RA "because the analysis is substantially the same." [5] *Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 551 (D. Md. 2019).

> "To make out a basic ADA violation, [a plaintiff] must show that he: (1) has a disability; (2) was otherwise qualified to get some public program, service, or activity; and (3) was denied that program, service, or activity on the basis of his disability." *Koon v. North Carolina*, 50 F.4th 398, 405 (4th Cir. 2022). The third prong may be satisfied by "a failure to make reasonable accommodations." *Id.* More specifically, "disability discrimination includes the failure to provide reasonable modifications that would make accommodations accessible to the disabled without causing an undue burden to the program." *Id.* at 406.

*Newman v. Cooper*, No. 7:23-CV-00431, 2025 WL 28470, at *3 (W.D. Va. Jan. 3, 2025). In this equation, however, the Court's primary inquiry is "whether a disabled inmate was denied meaningful access to the benefit" in question. *Koon*, 50 F.4th at 406.

The legal analysis also shifts when the only relief the plaintiff seeks is monetary damages. To qualify for such relief, Shumate "must both make out a violation of the ADA's reasonable-accommodation right and show that the violation was intentional." *Id.* at 403. This latter showing requires at least evidence to support a finding of deliberate indifference. *Id.* at 404.

In this context, "the deliberate-indifference standard starts with determining whether there was — objectively speaking — an ongoing or likely violation of some

---

[5] While the ADA and RA call for a slightly different causation analysis, the distinction is immaterial to the case before me. *Brown*, 383 F.Supp.3d at 551.

federal right, and then moves on to determining whether a defendant had the appropriate mental state — subjectively speaking — toward that federal-rights violation." *Id.* The initial step the plaintiff must take is to show "an ongoing or likely violation of a federally protected right." *Id.* at 405. "If there wasn't any ADA violation (or any substantially likely ADA violation), there was nothing to be deliberately indifferent about." *Id.* And where a plaintiff has not been denied access to the challenged service, his mere complaint of inconvenience or humiliation he experienced using the means of access provided does "not amount to a denial of services within the meaning" of the ADA or the RA. *Wagoner v. Lemmon*, 778 F.3d 586, 593 (7th Cir. 2015) (finding paraplegic plaintiff failed to state claim under RA or ADA where he alleged the prison's failure to provide a wheelchair-accessible van caused him longer waits and humiliation, including having to crawl out of the van).[6]

As stated, in this lawsuit, Shumate seeks only monetary damages for the alleged, past violations of his rights under the ADA, based on the NRVRJA's failure to provide a handicap-accessible vehicle to transport him to and from court on eight occasions. The defendants concede that Shumate's allegations meet the first and second elements of the standard for an ADA violation — he has a disability and was

---

[6] In *Wagoner*, the court rejected the plaintiff's ADA claim because he did not allege that the "failure to provide him with . . . a wheelchair-ready van (however inappropriate those failings might otherwise have been) denied him access to any services or programs." 778 F.3d at 593.

-7-

qualified to receive the NRVRJA service of being transported to and from court appearances.

The defendants argue that because Shumate had meaningful access to transportation to and from court proceedings, he cannot meet the third facet of the ADA standard. I agree. The mere inconvenience that Shumate experienced — climbing in and out of the van instead of remaining in his wheelchair, as he might have done if a specially equipped vehicle had been available — does not rise to the level of discrimination under the ADA or the RA. Shumate has not stated facts disputing the evidence in the record that the NRVRJA did not own a wheelchair-accessible van at that time. Nor does he allege facts showing that purchasing or renting such a vehicle for one inmate for a few trips to court over a few months' time would have qualified as a "reasonable accommodation" without "causing an undue burden" to the NRVRJA transportation budget. *Koon*, 50 F.4th at 406.

In addition, Shumate has not alleged facts showing that any NRVRJA employee knew that transporting him to court and back in a non-handicap-accessible van on a few occasions over a few months violated his federal rights. Shumate states that he asked for such an accommodation for each trip, but these requests do not prove employees knew the transportation provided to Shumate violated his federally protected rights. Indeed, Shumate's allegations suggest that jail staff provided him wheelchair access to and from the transport van on each trip and within the jail and

the courthouses where he attended court proceedings, as he complains only about entry and exit from the van itself. Shumate's contention that jail employees could or should have known that Shumate had a right to be transported in a handicap-accessible vehicle states nothing more than a negligence claim, which cannot rise to the level of deliberate indifference as required to state a claim for damages under the ADA.[7]  *Id.* at 407.

## III. CONCLUSION.

For the reasons stated, it is hereby **ORDERED** that the Motion to Dismiss, ECF No. 55, is GRANTED.

A separate Judgment will be entered.

ENTER: February 26, 2025

/s/  JAMES P. JONES
Senior United States District Judge

---

[7] In Shumate's responses to the Motion to Dismiss, he newly asserts that the lack of a handicap-accessible van violated his rights under the Eighth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Because Shumate did not include these legal claims in the SAC, I do not consider them as being properly before the Court in this case. *Maher v. Thompson*, No. 7:21CV00143, 2021 WL 6072566, at *3 (W.D. Va. Dec. 23, 2021) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").